Filed 5/6/14  P. v. Herrera CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>HECTOR MANUEL HERRERA,<br><br>　　　Defendant and Appellant. | D063090<br><br><br><br>(Super. Ct. No. SCD234143) |

APPEAL from a judgment of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for the Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Julie L. Garland, Assistant Attorneys General, Charles C. Ragland, Deputy Attorney General for the Plaintiff and Respondent.

A jury convicted Hector Herrera of oral copulation of a child 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (d); count 1) and lewd and lascivious touching of a child under the age of 14 (§ 288, subd. (a); count 2). The trial court sentenced him to a total prison term of 18 years to life, consisting of the indeterminate 15-year-to-life term on count 1 and a consecutive three-year determinate term on count 2. Herrera contends, for various reasons described below, that the court abused its discretion when it imposed consecutive sentences. Conceding that his counsel did not object to some of the court's sentencing decisions, he asks that we exercise our discretion to excuse his counsel's forfeiture and consider his arguments on the merits. Herrera alternatively argues the issue is directly reviewable as a claim for prejudicially ineffective assistance under the Sixth Amendment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Raquel G. has three children, the youngest of whom is Valeria G., who was four years old at the time of the offenses. In 2011, Raquel was taking Valeria and her other children to daycare at a facility owned by Guadalupe Herrera. Mrs. Herrera's husband, the defendant, was always at the facility and was her helper. Sometimes when Raquel dropped her children off Mrs. Herrera was not present, and either the defendant or Mrs. Herrera's sister-in-law would be watching the children. Most mornings the defendant was watching the children. The defendant would also take the children to and from school because Mrs. Herrera did not drive. Mrs. Herrera relied on the defendant to help

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

with the children at the daycare, and he supervised them while she prepared meals or ran errands. He would lie down with the children during midday naptime.

On May 16, 2011, Valeria asked her mother if she knew that the defendant touched her. Valeria pointed to her private area and said, "He touches me." On further questioning, Valeria told her mother she told the defendant to stop, and he did stop and walked away, but "a few minutes later, he came back and he did it again." Raquel asked Valeria if she was sure that is what happened, and she responded, "Yes." Valeria told her mother she was not lying, and asked her not to tell Mrs. Herrera, but to tell the defendant to stop.

Raquel called police the next day, and an officer spoke with Valeria and Raquel's other children. While grabbing her vaginal area, Valeria told the officer the defendant was touching her private parts. She also told the officer that the defendant pulled her pants off and started licking her vagina. Valeria told the officer it happened on the last day she was taken to daycare, which Raquel confirmed was the previous Friday.

On May 18, 2011, Valeria was interviewed by forensic interviewer Marisol Olguin. Valeria told Olguin that Hector took off her pants and licked her vagina (which she referred to as her "booty"), while she was sleeping on a chair. According to Valeria, Mrs. Herrera was in the kitchen. Valeria reported that she told the defendant, "No." and he told her he was going to grab her. Valeria told Olguin it happened one time. Valeria said the defendant also touched her once with his hand.

At trial, Valeria testified that the defendant touched her in her "private spot" with his hand while Mrs. Herrera was in the kitchen. She also testified that he licked her.

3

In imposing sentence, the trial court acknowledged it was familiar with the facts having presided over the trial, and pointed out the jury had reached verdicts on both counts. It found counts 1 and 2 were "separate and discrete acts for which Mr. Herrera should be punished consecutively." It continued: "The Court is aware of the lack of a significant criminal record on Mr. Herrera's part. I don't believe that he was the person that was necessarily entrusted with the children in this daycare situation. Nevertheless, he is married to the owner of the daycare and was certainly present and certainly helped out on a variety of times, and as such, he was in a position of trust in caring for these children, and he violated that position of trust." The court imposed the low term of three years on count 2 based on Herrera's lack of a significant criminal record, though it observed Herrera was without remorse and still denied committing the offenses.

## DISCUSSION

### I. *Standard of Review and Legal Principles*

California Rules of Court, rule 4.425 provides that "[a]ny circumstances in aggravation or mitigation" may be considered in deciding to impose concurrent or consecutive sentences unless the fact is used to impose an upper term, enhance defendant's sentence, or is an element of the crime. (Cal. Rules of Court, rule 4.425(b).) Criteria that may be used include that "[t]he crimes and their objectives were predominantly independent of each other" and "[t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a).) However, these criteria are not exclusive. California Rules of Court, rule 4.408(a) states:

4

"The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge."

This court reviews a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 [sentencing in general]; *People v. Bradford* (1976) 17 Cal.3d 8, 20 [concurrent versus consecutive sentences].) "In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal. [Citations.] Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered." (*Bradford*, at p. 20.) We undertake our review under this standard, mindful that " 'California courts have long held that a single factor in aggravation is sufficient to justify a sentencing choice . . . .' " (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413; *People v. Williams* (1991) 228 Cal.App.3d 146, 152.)

## II. *Separate and Discrete Acts Finding*

Herrera contends remand is required because the trial court's finding that he committed separate and discrete acts was "inapplicable" and not a proper reason to justify imposition of consecutive sentences. He maintains the proper test is whether he engaged in a "single period of aberrant behavior" (Cal. Rules of Court, rule 4.425(a)(3)), and the record evidence, because it does not show an "appreciable time differential," cannot support a consecutive sentence under this factor.

5

As the People point out, defense counsel did not object or challenge this factor as a ground for the court to consider. We conclude Herrera has forfeited the contention. " '[T]he waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it . . . failed to state any reasons or give a sufficient number of valid reasons.' " (*People v. Quintanilla*, *supra*, 170 Cal.App.4th at pp. 412-413, quoting *People v. Scott* (1994) 9 Cal.4th 331, 353; see generally *People v. Seijas* (2005) 36 Cal.4th 291, 302 [defendant's failure to make a timely and specific objection on the ground asserted on appeal renders that ground not cognizable].) "The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citations.] '[T]he forfeiture rule ensures that the opposing party is given an opportunity to address the objection, and it prevents a party from engaging in gamesmanship by choosing not to object, awaiting the outcome, and then claiming error.' " (*People v. French* (2008) 43 Cal.4th 36, 46.)

Acknowledging his counsel's inaction, Herrera asks that we either not invoke a forfeiture or address whether he received ineffective assistance of counsel due to defense counsel's failure to object to the court's sentencing error. To prevail on a claim of ineffective assistance of counsel, Herrera "must prove ' "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability

6

exists that, but for counsel's failings, the result would have been more favorable to the defendant." ' [Citation.] ' "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' [Citation.] If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150; see *Strickland v. Washington* (1984) 466 U.S. 668, 688.) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." (*Strickland v. Washington*, at p. 697.)

Here, we conclude below that the evidence supports the trial court's finding of another factor justifying a consecutive sentence: that Herrera was in a position of trust and confidence with respect to Valeria. As stated, a single appropriate factor is sufficient to support a decision to impose consecutive sentences. (See *People v. Osband* (1996) 13 Cal.4th 622, 728-729; *People v. Coelho* (2001) 89 Cal.App.4th 861, 888.) The court could have selected only that factor to impose Herrera's sentence, and on this record we discern no reasonable probability it would not have done so even assuming counsel was ineffective in failing to object to the "separate and discrete acts" finding.

### III. *Position of Trust Finding*

Herrera contends the evidence does not support the trial court's finding that he occupied a position of trust with respect to Valeria or the other children; that his duties were mainly driving the children to and from school and occasionally watching them while they were playing in the playroom or when Mrs. Herrera was cooking. He also

7

maintains the evidence shows the children at times refused to obey his directions and he had to call his wife to speak to the children and direct them to follow his instructions.

Herrera relies on *People v. French* (2008) 43 Cal.4th 36 and other authorities, but we conclude his arguments are unpersuasive. *French* involved whether the defendant's plea of no contest constituted an admission of the additional aggravating circumstance that the defendant took advantage of a position of trust in committing his offense, lewd and lascivious conduct with a child under 14 years of age, who was a charge at an in-home daycare run by the defendant's daughter. (*French*, at pp. 41-42, 50-51.) The California Supreme Court held that the factual basis as stated by the prosecutor—that defendant committed the offenses against one of his victims when he took him to the bathroom located in a park—did not clearly establish that aggravating circumstance. (*Id*. at p. 51.) The court observed that the prosecutor did not state that the victim had been entrusted to the defendant's care, nor did the prosecutor specify what the defendant's role was in relation to his daughter's daycare. (*Id*. at p. 51.) *French* and other authorities relied upon by Herrera merely summarize facts that either supported or did not support a court's conclusion that a defendant occupied a position of trust; none purport to set forth general standards or rules governing that factual inquiry for sentencing purposes. (*People v. Franklin* (1994) 25 Cal.App.4th 328, 338 [evidence was undisputed that defendant was victim's stepfather and entrusted with caring for victim and her sister, which placed him in a position of trust and confidence regarding the children; such a finding was not an element of the crime of continuous sexual abuse and thus its use as an aggravating factor was not prohibited]; *People v. Dancer* (1996) 45 Cal.App.4th 1677,

1683, 1693-1695 [finding that the defendant exploited a position of trust was supported by evidence that the defendant ingratiated himself to a young child without a resident father, brother or playmates; gave her candy and ice cream; let her use his exercise equipment; and fostered a relationship in which she trusted him enough to enter his garage despite her mother's instruction], disapproved on another ground in *People v. Hammon* (1997) 15 Cal.4th 1117, 1123; *People v. Pham* (2009) 180 Cal.App.4th 919, 930 [defendant did not dispute court's conclusion used to impose upper term that he, as the victim's treating chiropractor, took advantage of a position of trust]; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1262-1263 [trial court's finding that appellant took advantage of a position of trust by taking them on rides on his big rig truck equipped with a sleeping area did not violate rule that aggravating factor could not be an element; offense of continuous child abuse was not an element of that offense].) Another authority cited by Herrera does not involve a sentencing issue. (See *People v. Cardenas* (1994) 21 Cal.App.4th 927, 940 [involving sufficiency of the evidence findings as to duress, force or fear pursuant to conviction under section 288, subdivision (b), and concluding jury's finding was supported by evidence that the appellant, purporting to act as a "curandero" or healer, placed himself in a position of trust with his victims and traded on their fears that if they did not allow him to proceed with his "cure," they would remain ill or face imminent death].)

Here, in contrast to *People v. French*, *supra*, 43 Cal.4th 36, the evidence establishes that Herrera did in fact care for the children while his wife was not present, drove them to and from school, walked with them to the park once or twice a week, and

9

at time disciplined them.[2]  The trial court reasonably concluded these were circumstances where Herrera was necessarily supervising the children, entrusted with their care and safety, and in a position of trust and authority with regard to then four-year-old Valeria, regardless of whether other children regarded him as an authority figure or heeded his instruction.


DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

---

2      When asked whether Herrera was "sort of the disciplinarian around there . . . " Mrs. Herrera testified, "Most of the time, it was me. . . . But whenever Hector wanted to discipline them, they would say bad words to him, and I would be hearing and watching them."

10