[No. B203825. Second Dist., Div. Five. Jan. 22, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
NERY QUINTANILLA, Defendant and Appellant.

## COUNSEL

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lance E. Winters and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KRIEGLER, J.**—The jury found defendant and appellant Nery Quintanilla guilty of two crimes against a child, whom we refer to as A.[1]—aggravated sexual assault (rape) and a forcible lewd act (Pen. Code, §§ 269, subd. (a)(1), 288, subd. (b)).[2] The trial court imposed an indeterminate term of 15 years to life for the aggravated sexual assault and a consecutive low term of three years for the forcible lewd act. In his timely appeal, defendant contends the court abused its discretion by imposing a full consecutive sentence under section 667.6, subdivision (c). He also challenges the imposition of a consecutive sentence as a violation of his Sixth Amendment right to a jury trial.

We affirm.

---

[1] All victims and family members are referred to by their initials.

[2] All further statutory references are to the Penal Code.

## STATEMENT OF FACTS

*Prosecution*

### A. *Charged Offenses*

A. was 13 years old on March 31, 2006. Her mother, A.B., lived with A. and her siblings in an upstairs apartment in Los Angeles. Defendant was a longtime resident of the apartment building, whom A.B. had seen and greeted many times. Whenever defendant saw A., he would ask, "how is your family?"

At approximately 4:00 p.m., A. went outside to take out the trash. There were two ways of reaching the apartment building's trash receptacle in the garage underneath the apartments—either through the front or the back of the building. Worried because A. was taking so long to return, A.B. looked for her daughter in front of the building. Not finding her there, A.B. returned to the apartment to see if she and her daughter had crossed paths. Not finding A. at home, A.B. went downstairs to the garage.

On the way down the stairwell, A.B. heard her daughter saying, "Stop, stop. Leave me alone." In the garage between two parked cars, A.B. saw defendant holding A. by her wrists, as the girl repeatedly told defendant to stop and leave her alone. A. was leaning against a car, facing defendant. A.'s pants were pulled down to her knees, as were defendant's. A.B. shouted, "Is that you?" Defendant, surprised, drew away from A. and began to pull up his pants. A.B. saw defendant's erect penis. She took her daughter upstairs to their apartment, where she reported the matter to the police. Officers arrived and took them to the hospital, where A. was examined.

A. testified that she was a friend of defendant's daughter and defendant would typically engage her in friendly conversation. On the afternoon of March 31 she went toward the back of the apartment building to take out the trash. After A. put the trash in the bin, defendant stopped her and asked about her family. When A. was about to leave, defendant grabbed her by the wrists and pushed her between two cars. She told him to leave her alone, but he pulled down her pants as she continued telling him to go away. Defendant pulled down his own pants, exposing his penis. He touched her vaginal area with his hand, causing her pain. She kept moving her head away to prevent him from kissing her. As she continued to protest, defendant tried to penetrate her vagina with his penis. "It did not go all the way, it just went a little bit." Defendant pulled away when A.B. arrived.

Nurse Janie Salazar interviewed A. at the hospital. A.'s report of the incident was generally consistent with her trial testimony. The nurse conducted a full physical and genital examination, which revealed areas of redness around A.'s hymenal tissue, consistent with forceful touching and penetration. Defendant was also taken to a hospital where Nurse Jacqueline Foley conducted a sexual assault examination on him. There was evidence of semen on his genitals.

Criminalist Patricia Pape of the Los Angeles Police Department analyzed the sexual assault kits from defendant and A. She found sperm on swabs from A.'s genitalia, including the swab from her vulva. DNA analyst Jody Hrabal found DNA samples taken from defendant's penis matched that of A.

### B. *Prior Incident*

M.A. testified that on October 10, 1999, she was at Griffith Park with her children for a carnival. Her nine-year-old daughter was standing in line for a ride. Defendant was directly behind her. He kept pressing his genital area against the little girl's backside. When she got on the ride, defendant returned to the line and stood behind another young girl and did the same thing to her. M.A. reported defendant to the security person, Alvaro Salazar.

Upon receiving M.A.'s report, Salazar observed defendant for approximately five minutes. He verified that defendant was standing right behind a little girl and "was rubbing his penis against her back or bottom." Defendant repeated those acts with another girl in line. The police arrived in response to his radio report of a possible child molester and arrested defendant.

### *Defense*

Forensic scientist Marc Scott Taylor testified that the DNA samples from defendant's penis contained a mixture of cells from defendant and cells that could have come from A. Given the location and relatively small amount of A.'s DNA contribution, the result of the testing of this sample is consistent with the victim having touched herself and then touching defendant's penis. The sample from A.'s vulva contained large quantities of her own DNA and "very, very small numbers of sperm cells." The sperm was consistent with defendant's DNA profile. Taylor was of the opinion this result was consistent with a transfer of the small number of sperm cells to A. by hand.

### DISCUSSION

Defendant contends the trial court abused its discretion by imposing a full consecutive sentence under section 667.6, subdivision (c), because it failed to

give separate reasons for sentencing consecutively and for imposing a full consecutive sentence. He also argues the court relied on improper or otherwise inadequate sentencing factors. We disagree.

■ " 'It is well settled that in making sentencing choices pursuant to section 667.6, subdivision (c), sexual assault offenses, the trial court must state a reason for imposing a consecutive sentence and a separate reason for imposing a full consecutive sentence as opposed to one-third the middle term as provided in section 1170.1.' [Citation.] . . . [H]owever, the court may 'repeat the same reasons.' (Cal. Rules of Court, rule 426(b)[, now rule 4.426(b)].)" (*People v. Osband* (1996) 13 Cal.4th 622, 729 [55 Cal.Rptr.2d 26, 919 P.2d 640].) "What is required is an identification of the criteria which justify use of the drastically harsher provisions of section 667.6, subdivision (c). The crucial factor, in our view, is that the record reflect recognition on the part of the trial court that it is making a separate and additional choice in sentencing under section 667.6, subdivision (c)." (*People v. Belmontes* (1983) 34 Cal.3d 335, 348 [193 Cal.Rptr. 882, 667 P.2d 686], fn. omitted.) In making this determination, "[t]he sentencing judge is to be guided by the criteria listed in rule 4.425, which incorporates rules 4.421 [(aggravating circumstances)] and 4.423[ (mitigating circumstances)], as well as any other reasonably related criteria as provided in rule 4.408 [(enumerated criteria not exclusive)]." (Cal. Rules of Court, rule 4.426(b).)

There can be no serious doubt as to the trial judge's understanding of the scope of her sentencing discretion under section 667.6, subdivision (c). After discussing the matter with the prosecutor, the court acknowledged that under section 667.6, subdivision (c), it had discretion to impose a full consecutive sentence for each enumerated sex crime committed during an indivisible or single transaction.[3]

The prosecutor argued for imposition of a full consecutive upper term sentence for the forcible lewd act conviction in addition to the mandatory term of 15 years to life for the aggravated sexual assault conviction. In justification, the prosecutor pointed to defendant's criminal history, which arose out of the 1999 incident in which he committed serial sexual assaults against young girls at a park. The prosecutor also argued defendant committed the underlying offenses by abusing his relationship as a friendly neighbor—as such, he "was somewhat in a position of trust." The defense acknowledged the trial court's discretion to impose a consecutive sentence,

---

[3] "In lieu of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of an offense specified in subdivision (e) if the crimes involve the same victim on the same occasion. A term may be imposed consecutively pursuant to this subdivision if a person is convicted of at least one offense specified in subdivision (e). . . ." (§ 667.6, subd. (c).)

but argued the evidence that the 1999 incident was sexual in nature was highly questionable and much time had passed since then without intervening sexual offenses. As to the "position of trust" analogy, the defense considered it "a real stretch" because defendant had no responsibility over the victim, but merely happened upon her in an apartment building common area.

The trial court found consecutive sentencing appropriate because A. was relatively young when she was raped in the garage of her apartment building. Further, although defendant was "not [in] a position of trust," he was a neighbor with whom she and her family had an ongoing, cordial relationship. "This is a person she had no reason to be afraid of." The court found the 1999 incident relevant to its assessment, noting that two witnesses observed the underlying sexual conduct. Finally, the court pointed out that because defendant was 48 years old at the time he raped and abused A., "[h]e was certainly old enough to know what kind of damage could be done to a 13-year-old child who was raped."

Defendant read a long statement of remorse for the suffering he caused A. and her family, along with the humiliation he caused his own family and friends. Among other things, defendant stated: "Words cannot express the sorrow I felt abusing your trust and causing you any harm [through] no fault of your own." The trial court found defendant's acknowledgment of responsibility was genuine. Based on what the court found was an extraordinary and "heartfelt" statement of remorse by defendant, it chose to impose a consecutive low term sentence, rather than the middle term it had first intended. On the other hand, while making it clear that the court was not punishing defendant for exercising his constitutional right to go to trial, it noted that defendant's acceptance of responsibility came only after he rejected two plea offers and went to trial—as a result, A. was forced to endure cross-examination. The court also acknowledged the prosecutor's point that defendant had failed to learn from the counseling ordered as part of his 1999 conviction, but rather had engaged in far more serious, predatory sexual conduct.

To the extent defendant argues the trial court failed to make a separate statement as to the reasons for imposing a full consecutive sentence, we agree with the Attorney General that he forfeited that claim by failing to raise it below. "[T]he waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court

purportedly erred because it . . . failed to state any reasons or give a sufficient number of valid reasons." (*People v. Scott* (1994) 9 Cal.4th 331, 353 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)

■    On the other hand, generally consistent with his arguments in the trial court, defendant contends the court's reasons for imposing the consecutive term—A.'s youth and her being forced to testify at trial, along with defendant's status as a neighbor and the significance of his prior offense—were improper and inadequate. Before assessing this claim, we note "California courts have long held that a single factor in aggravation is sufficient to justify a sentencing choice, including the selection of an upper term for an enhancement." (*People v. Brown* (2000) 83 Cal.App.4th 1037, 1043 [100 Cal.Rptr.2d 211].)

Standing alone, the court's reliance on A.'s youth would have been improper. Under California Rules of Court, rule 4.425(b)(3), "[a] fact that is an element of the crime may not be used to impose consecutive sentences." As defendant was convicted of committing forcible lewd acts upon a child under 14 years of age, the fact that A. was 13 years old at the time could not serve as an aggravating factor. Like the Attorney General, however, we understand the court's reference to the victim's youth as part of its vulnerability and abuse of trust rationale: Defendant exploited the cordial relationship he had built up over years, as a friendly neighbor and father of A.'s friend, in making his initial approach to A. in the parking lot. Indeed, defendant admitted as much when he made his statement of remorse. There was nothing improper in finding such actions to be an aggravating factor. (See Cal. Rules of Court, rule 4.421(a)(3), (11).)

■    Defendant is correct that it would have been improper for the trial court to impose additional punishment based on defendant's decision to exercise his constitutional trial rights. "[T]he high court long has recognized that the state may not punish a defendant for the exercise of a constitutional right, or promise leniency to a defendant for refraining from the exercise of that right." (*People v. Collins* (2001) 26 Cal.4th 297, 305–306 [109 Cal.Rptr.2d 836, 27 P.3d 726].) However, we are confident the court had no such intent. Read in context, it is clear the court was explaining why defendant's belated expression of acceptance of responsibility did not weigh more heavily in mitigation: Defendant's profession of remorse may have been heartfelt, but it only surfaced after the jury had found him guilty.

As to the trial court's reliance on defendant's prior offense, defendant points out that he had entered a guilty plea to battery, not the sexual offense

for which he had been charged. However, as the court explained at sentencing, the trial testimony left no serious doubt as to the sexually motivated nature of defendant's prior misconduct. The court was entitled, in the exercise of its discretion, to credit the prosecutor's argument that defendant failed to learn from his prior offense and counseling and instead of exhibiting rehabilitation, engaged in far more serious acts of sexual violence and predation, including the rape of a child. (See Cal. Rules of Court, rule 4.421(a)(1) [defendant's violent conduct], (b)(2) ["defendant's prior convictions . . . are . . . of increasing seriousness"].)

■ The trial court's reasoning not only demonstrated a clear recognition that it was making an additional, separate sentencing choice, but that it reasonably viewed defendant as the kind of "more serious sex offender[]" for which the punitive aspect of section 667.6, subdivision (c) was designed. (*People v. Belmontes, supra,* 34 Cal.3d at p. 349.) Defendant certainly falls within the category of "serious sex offender" as defined by the Attorney General for purposes of sections 290.4 and 290.45, referred to as "Megan's Law." (*Fredenburg v. City of Fremont* (2004) 119 Cal.App.4th 408, 416–417 [14 Cal.Rptr.3d 437] ["Megan's Law defines a high-risk sex offender but does not define a serious sex offender—despite the mention of serious sex offenders in the uncodified preamble. But clearly the preamble contemplates that a serious sex offender is of a class less severe than a high-risk sex offender, especially given the definition of the latter category involving conviction of multiple crimes of violence. The Attorney General has defined a serious sex offender as one convicted of certain offenses, including child molestation, who does not have the aggravated criminal record sufficient to qualify him as a high-risk offender."].)

■ The factors in aggravation of punishment were strong, while the only potential factor in mitigation was recognized and served to reduce defendant's term in prison as the trial court deemed appropriate. There was no abuse of discretion in imposing a full consecutive sentence.

■ Finally, we address defendant's claim of error under the Sixth Amendment rubric—that his consecutive sentence was imposed without a jury finding on aggravating factors pursuant to *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] and *Blakely v. Washington* (2004) 542 U.S. 296, 301 [159 L.Ed.2d 403, 124 S.Ct. 2531]. The contention is without merit. Both the United States and California Supreme Courts have held that the Sixth Amendment does not apply to a trial court's determination to impose a consecutive sentence. (*Oregon v. Ice* (2009) 555 U.S. ___ [172 L.Ed.2d 517, 129 S.Ct. 711]; *People v. Black* (2007) 41 Cal.4th 799, 820–823 [62 Cal.Rptr.3d 569, 161 P.3d 1130].)

## DISPOSITION

The judgment is affirmed.

Armstrong, Acting P. J., and Mosk, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 22, 2009, S170606. Corrigan, J., did not participate therein.