Filed 7/29/14  P. v. Gallego CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>ERICKA SHIRLEY GALLEGO,<br><br>　　　Defendant and Appellant. | A139109<br><br>(Contra Costa County<br>Super. Ct. No. 5-111698-7) |

Defendant Ericka Shirley Gallego was convicted of kidnapping a child under 14 years of age and first degree burglary after she entered her son's home when he was away, removed her baby granddaughter, and drove off with the child.  Defendant contends the trial court denied her due process by relying on factors outside the scope of the record in exercising its sentencing discretion.  We affirm.

## I.  BACKGROUND

Defendant was charged in an information filed November 14, 2011, with one count of kidnapping a child under the age of 14 (Pen. Code, §§ 207, subd. (a)/208, subd. (b)) and one count of first degree residential burglary (Pen. Code, §§ 459/460, subd. (a)), with a special allegation that defendant committed the burglary while a nonparticipant was in the residence (Pen. Code, § 667.5, subd. (c)(21)).

Defendant, the grandmother of the four-month-old baby victim, broke into her son's home and took the victim from her bassinet.  For months prior to the kidnapping, she had insisted to her boyfriend and her friends she was pregnant, even throwing herself a baby shower.  On the day of the kidnapping, defendant packed diapers, a car seat, and

baby clothes into the car of two individuals and paid them a total of $200 to drive her to the victim's house. Defendant put on latex gloves, disabled the security system, came out of the house running with the victim, and returned to her home.

Defendant agreed to submit the matter to court trial on the police reports and the preliminary hearing transcript in exchange for an eight-year maximum sentence. She was found guilty and sentenced to eight years on the charge of kidnapping, with a concurrent term of four years on the charge of burglary.

The sole issue on appeal arises from statements the court made in response to defense counsel's request that defendant be sentenced to the mitigated term or granted probation with conditions for suitable mental health treatment. In addition to arguing defendant did not harm the victim, had no prior criminal record, was of an advanced age, and did not put the victim's family members through a jury trial, counsel referred to a letter written by the Governor upon her retirement, stating defendant had worked in the school district for 21 years and congratulating her on her accomplishments. Counsel also emphasized defendant needed mental health treatment and argued there was no indication she would receive such treatment in prison.

The trial court denied defendant probation and sentenced her to the midterm of eight years. The court noted defendant's crime involved sophistication and planning and her mental disorder did not affect her ability to judge what she was doing. The court found defendant violated a position of trust as the victim's grandmother, had selected a particularly vulnerable victim, and was a danger to her family and the community, and it concluded her family would be safer if she was imprisoned. In response to defense counsel's statement that defendant needed treatment, the trial judge said he was familiar with the prison system and, for women, it was "the most effective part of our prison system, and they do provide [mental health treatment] services." Further, he stated women's prisons have much better treatment programs than men's prisons and are not nearly as crowded. In response to defense counsel's statement that the Governor had recognized defendant's accomplishments, the trial judge said he had worked in the

Governor's office at some point in his career and the letters to citizens are produced by a signature machine operated by a "low level staffer."

## II. DISCUSSION

Defendant contends the trial court denied her due process by improperly relying on factors outside the scope of the record in exercising its sentencing discretion, pointing to the court's references to mental health treatment in women's prisons and the operations of the Governor's office.

We decline to address the merits of defendant's claim of error because, even assuming the judge's comments were improper, any error was harmless under both the *Watson* and *Chapman* standards. (*People v. Watson* (1956) 46 Cal.2d 818, 836 [reversal required if it is reasonably probable defendant would have had a more favorable result absent the error]; *Chapman v. California* (1967) 386 U.S. 18, 24 [reversal required unless error is harmless beyond a reasonable doubt].)

To the extent defendant directs her claim to the trial court's choice of the midterm sentence, " 'California courts have long held that a single factor in aggravation is sufficient to justify a sentencing choice.' " (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.) As discussed above, the trial court found several aggravating factors, all of which were supported by the evidence. Even if the court had not disregarded her claims that she could receive better mental health treatment outside prison and had been commended by the Governor, there is no reason to believe the court would have found that the various mitigating factors cited by counsel outweighed the many aggravating factors, justifying imposition of the lower term.

To the extent defendant directs her claim to the trial court's selection of a prison sentence over probation, trial courts have broad discretion to determine whether a defendant is suitable for probation. (*People v. Bradley* (2012) 208 Cal.App.4th 64, 89.) In deciding whether to grant probation, the trial court should consider the various factors enumerated in California Rules of Court, rule 4.141, although it can consider other factors as well. (*People v. Weaver* (2007) 149 Cal.App.4th 1301, 1312–1313.) Here, after reviewing the probation report and considering the plea agreement and counsel's

arguments at sentencing, the court elected not to grant probation. The various factors supporting imposition of the midterm sentence also supported denial of probation, such as a crime involving sophistication and planning, a particularly vulnerable victim, abuse of a position of trust, and the likelihood defendant would be a danger if she was not imprisoned. (Cal. Rules of Court, rules 4.414(a)(8), (3), (9), (b)(8).) Based on the various factors listed above, in particular the trial court's concern for protecting the victim and her family from further harm, we are persuaded beyond a reasonable doubt that defendant would not have received probation absent the court's consideration of purportedly improper matters.

### III. DISPOSITION

The judgment of the trial court is affirmed.


_____
Margulies, Acting P.J.


We concur:


_____
Dondero, J.


_____
Banke, J.

4