Filed 10/4/21  P. v. Fowler CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DEANDRE DARIUS FOWLER,<br><br>        Defendant and Appellant. | C092351<br><br>(Super. Ct. Nos. 18FE021033,<br>        17FE008013) |

        While on probation in another matter, a jury found defendant Deandre Darius Fowler guilty of second degree robbery.  On appeal, defendant contends the trial court abused its discretion by imposing an unconstitutionally disproportionate upper term sentence of five years for the robbery conviction despite multiple factors in mitigation. Finding no merit to his contentions, we affirm.

## I.  BACKGROUND

        In May 2017, defendant pled no contest to felony assault by means of force likely to produce great bodily injury (Penal Code, § 245, subd. (a)(4)),[1] and misdemeanor theft

---

[1]  Further undesignated statutory references are to the Penal Code.

(§ 484) in case No. 17FE008013 (the assault case) in exchange for probation.[2] The court suspended imposition of judgment and sentence and placed him on five years formal probation with various terms and conditions, including that he serve 120 days in jail.

In October 2018, defendant and codefendants Alexander Smith and Alexander Newsome were charged with second degree robbery (§ 211) of victim E.M. in case No. 18FE021033 (the robbery case). Because defendant was still on active probation in the assault case, the prosecutor filed a petition for violation of probation.

Smith pled no contest prior to trial, and defendant and Newsome were tried jointly before a jury. The following evidence was adduced at trial.

E.M. testified that one night in October 2018 he attended a Kings basketball game in Sacramento.[3] He had consumed a large quantity of alcohol. After the game, he went to a bar, and then later took the light rail to go home.

E.M. exited the light rail station at Broadway. He was very intoxicated and was unsure why he got off at that station as it was not his stop. He began talking to a man, and they eventually started drinking together.

At some point, E.M. walked towards a bus stop near the Broadway station. On his way back from the bus stop, he met up again with the man he had been talking to and drinking with; a couple other men were also there. One of the men told E.M. to give him his wallet and whatever else was in his pockets. E.M. began tussling with the men and fell to the ground into some bushes; the men shoved and kicked him. While on the ground, the men took his wallet, which included some personal items and cash. E.M.

---

[2] Defendant was initially charged with second degree robbery (§ 211), which the parties later agreed to reduce to assault and misdemeanor theft.

[3] When recalled by the defense, E.M. conceded he did not know that the Kings were not playing in Sacramento that night, and said he must have watched the game while drinking at a bar.

remembered at least three men physically assaulting him during the robbery. The men ran off after taking his wallet.

Police arrived at the light rail station a short time later and found E.M. near the station platform. E.M., who was visibly intoxicated, told the responding officer that a group of five to six men whom he did not know approached him while near the bus stop and told him to empty his pockets. They punched him and pushed him to the ground. While on the ground, one man reached into his front pants pocket and stole his tan leather wallet that contained $60.

The jury viewed surveillance video of the incident. E.M. could not identify any of the perpetrators from the video, and he did not recognize any of the defendants during trial.

The surveillance video showed two men, later identified as defendant and Newsome, boarding the light rail train at the stop immediately after E.M. had boarded the train. Defendant was wearing a distinctive black and yellow tie-dyed hooded sweatshirt with his hair in dreadlocks, pulled up into two buns on the sides of his head. Defendant, Newsome, and E.M. all got off the train at the same station. E.M. and defendant could be seen walking together, then exchanging something that looked like a bottle of liquor and both drank from the bottle. Later, defendant, Newsome, and Smith surrounded E.M. and push him into the bushes.

Defendant was apprehended the following day wearing the same distinctive hooded sweatshirt with the same hairstyle as seen in the surveillance video. He was arrested and taken into custody. During a subsequent search at the jail, officers located a brown leather wallet that belonged to E.M. in defendant's possession.

The jury found defendant and Newsome guilty of second degree robbery. Based on his conviction in the robbery case, defendant was found guilty of violating probation in the assault case.

The probation department recommended the court impose and suspend execution of the upper term of five years for defendant's robbery conviction in the robbery case, and a consecutive one-third the midterm of one year for defendant's assault conviction in the prior assault case, for a total aggregate sentence of six years in both cases. Probation further recommended that the court place defendant on formal probation to participate in the Adult Day Reporting Center (ADRC) program.

In support of the recommended upper term, the presentence probation report listed three circumstances in aggravation—that defendant had engaged in violent conduct which indicated a serious danger to society, that his prior record of criminal conduct was significant, and that he was on formal probation when he robbed E.M. (Cal. Rules of Court, rule 4.421(b)(1), (2), & (4).)[4] The report listed defendant's youth (21 years old) as the sole circumstance in mitigation. (Rule 4.408.)

Defendant filed a sentencing brief urging the court to impose a suspended midterm sentence of four years plus placement in the ADRC program as recommended by probation. In addition to his youth (rule 4.408), defendant argued other factors in mitigation warranted the midterm, including that he had no apparent predisposition to engage in the robbery but was induced by others to participate in the crime (rule 4.423(a)(5)), and that he voluntarily acknowledged wrongdoing before arrest or at an early stage of the criminal process (rule 4.423(b)(3)). His sentencing brief also noted his childhood background split between two homes, how his mother had lost her home and the family had to find a new place to live, that defendant was homeless for a period of time, and that defendant had four children with whom he wanted to cultivate a relationship.

---

[4] Further undesignated rule references are to the California Rules of Court.

4

At the sentencing hearing, defense counsel argued defendant wished to resolve the case early but was precluded from doing so due to the codefendants involvement in the case. Counsel again reiterated defendant's youthfulness as a mitigating factor.

The prosecutor requested the court impose the midterm of three years, which was the People's original offer to defendant.[5] He disagreed with probation's recommendation to suspend sentence and place defendant in the ADRC program because he did not believe defendant would comply with the more onerous ADRC program requirements when he failed on probation only a year after being given a break in the assault case.

The court rejected probation's recommendation to suspend sentence and place defendant in the ADRC program. The court imposed the upper term of five years for the robbery and one year for the earlier assault offense. In denying probation and rejecting probation's ADRC recommendation, the court noted that defendant's criminal history included the recent 2017 robbery crime for which he ultimately pled no contest to a non-strike assault offense and theft, and he had failed on probation for those offenses. His criminal history, in the court's view, also appeared to negate any mitigation based on his youthfulness. And his failure on probation and his jail misbehavior demonstrated that defendant had no interest in following rules or trying to live a crime-free life despite having family and at least one child at the time he committed the crimes. The court stated: "I'm choosing the upper term because he was on probation at the time of the commission of this offense for an offense that is significantly similar to the offense for which he was found guilty in our case, and I see no matters in mitigation. I can't think of

---

[5] Although defendant apparently wanted to accept the three-year offer, the prosecutor would not accept his plea unless all three codefendants resolved their matters; for reasons not apparent from the record, Smith eventually pled no contest prior to trial and defendant and Newsome proceeded to a jury trial.

a single thing in mitigation. Even the fact that he is young is really belied by the—his past criminal conduct." Defendant timely appealed.

## II. DISCUSSION

Defendant contends the court abused its discretion by imposing the upper term for robbing E.M. He argues the court improperly dismissed his youthfulness as a mitigating factor and did not consider other mitigating factors such as his lack of education and history of poverty, homelessness, instability, and voluntary intoxication. In his view, his upper term sentence was "unconstitutionally harsh." We conclude the court did not abuse its discretion in imposing the upper term.

We review a trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*).) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*Ibid.*)

The court may rely on any aggravating circumstances reasonably related to its sentencing decision (*Sandoval, supra*, 41 Cal.4th at p. 848; rule 4.420) and need not explain its reasons for rejecting alleged mitigating circumstances (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583; *People v. Holguin* (1989) 213 Cal.App.3d 1308, 1317 (*Holguin*)).[6] Unless the record affirmatively indicates otherwise, the trial court is deemed to have considered all relevant criteria, including any mitigating factors. (*Holguin, supra,* at pp. 1317-1318; rule 4.409 ["Relevant factors enumerated in these rules must be

---

[6] "In exercising his or her discretion in selecting one of the three authorized terms of imprisonment referred to in section 1170[, subdivision] (b), the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing." (Rule 4.420(b).)

considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise"].) The court may base an upper term sentence upon any aggravating circumstances it deems significant (*Sandoval, supra,* at p. 848), and a single factor in aggravation is sufficient to impose the upper term. (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.)

In this case, the probation report listed three circumstances in aggravation: that defendant engaged in violent conduct indicating a serious danger to society, that his prior criminal record was significant, and that defendant was on formal probation when the crime was committed. The report listed defendant's age (21 years old) as a circumstance in mitigation. Defendant's sentencing brief called the court's attention to several other mitigating factors, including defendant's difficult background and upbringing, his failure to graduate from high school because he got into trouble, his periodic homelessness, that he had no predisposition to rob the victim and was only induced by others to participate in the crime, and that he voluntarily acknowledged wrongdoing at an early stage of the criminal process.

The court considered the probation report as well as defendant's sentencing brief. Thus, contrary to defendant's argument, the court did consider defendant's lack of education, history of poverty, homelessness, and instability during sentencing. That the court did not find those factors compelling when balancing aggravating and mitigating factors does not mean the court abused its discretion in choosing the upper term based on defendant's poor probationary performance at the time of the crime. The court was not required to explain its reasons for rejecting alleged mitigating circumstances. (*People v. Avalos, supra*, 47 Cal.App.4th at p. 1583; *Holguin, supra*, 213 Cal.App.3d at p. 1317.)

Even if we assume, without deciding, that the court improperly disregarded defendant's youth as a mitigating factor, the probation report listed three factors in

aggravation, any one of which was sufficient to support imposing the upper term.[7] (*Sandoval, supra*, 41 Cal.4th at p. 848 [upper term may be based upon any aggravating circumstance the trial court deems significant]; *People v. Quintanilla, supra*, 170 Cal.App.4th at p. 413 [a single aggravating factor can support an upper term sentence].) The court chose defendant's probationary status at the time he committed the crime as a specific aggravating factor justifying the upper term. That was proper. (Rule 4.421(b)(4) [circumstances in aggravation include factors relating to the crime and factors relating to the defendant, including that a defendant was on probation, mandatory supervision, post release community supervision, or parole when the crime was committed].)

In so concluding, the court noted that defendant had been on probation for a similar robbery in 2017 in the assault case, which had been broken down into an assault and theft to allow defendant the benefit of avoiding a strike. Despite being given probation, defendant had failed to take advantage of what probation had to offer to avoid future criminal behavior as evidenced by his robbery conviction against E.M., as well as his misconduct while in jail. We cannot say on this record that the trial court's decision was arbitrary or capricious, or that the court failed to consider defendant's offense or his underlying background. (*Sandoval, supra*, 41 Cal.4th at p. 847.)

To the extent defendant argues his five-year term for the robbery was "unconstitutionally harsh" in violation of the Eighth Amendment of the United States Constitution or article I, section 17, of the California Constitution, he did not argue below

---

[7] Defendant argues the general rule—that a single aggravating factor is sufficient to support an upper term sentence—should only apply in the most egregious of cases, such as sexual abuse or trafficking matters. But he cites no authority for this proposition, and robbery itself has been deemed sufficiently egregious to delineate it as a serious and violent felony. (§§ 667.5, subd. (c)(9), 1192.7, subd. (c)(19).) We therefore find no persuasive reason to depart from the well-settled rule regarding a single factor in aggravation.

8

that the sentence constituted cruel and unusual punishment under the constitutional provisions when the trial court imposed the five-year upper term.  Because he failed to raise such contentions below, he has forfeited the issue.  (*People v. Brewer* (2021) 65 Cal.App.5th 199, 212 (*Brewer*).)

In any event, even if defendant's constitutional claims were properly preserved,[8] we conclude the five-year term imposed for defendant's robbery conviction was not grossly disproportional to the crime, especially given defendant's criminal history.

It is well settled that the concept of proportionality is central to the Eighth Amendment; the constitutional ban on cruel and unusual punishment includes the concept that punishment for crime should be graduated and proportioned to the offense.  (*In re Coley* (2012) 55 Cal.4th 524, 538; *Brewer, supra*,65 Cal.App.5th 199, 212.)  But the Eighth Amendment's proportionality principle is *narrow* in the context of non-capital sentences for adult offenders like defendant.  (*In re Bolton* (2019) 40 Cal.App.5th 611, 622.)  It does not require strict proportionality between crime and sentence, although it does prohibit extreme sentences that are grossly disproportionate to the crime.  (*Ibid.*)

To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court looks to the gravity of the offense and the severity of the sentence.  (*Brewer, supra*, 65 Cal.App.5th at p. 213.)  "For recidivists, the gravity of the offense consideration in the [Eighth] Amendment analysis is not limited to the offense itself, but rather it includes the offense plus having been convicted of a prior serious or violent felony offense."  (*Ibid.*, citing *Ewing v. California* (2003) 538 U.S. 11, 28.)

---

[8]  Defense counsel argued in his sentencing brief that a suspended middle term sentence of four years would be sufficient to ensure defendant's compliance with the ADRC program "without being unduly punitive."

California's prohibition on cruel and unusual punishment (Cal. Const., art. 1, § 17) has been read to bar any sentence " 'so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' " (*People v. Boyce* (2014) 59 Cal.4th 672, 721, italics omitted.)  Courts consider the nature of the offense and the offender, with emphasis on his danger to society, the penalty imposed compared with the penalties for more serious crimes in California, and the punishment for the same offense in other jurisdictions.  (*Brewer, supra*, 65 Cal.App.5th at pp. 213-214.)

On review, we must grant substantial deference to the Legislature's broad authority to determine the types and limits of punishments for crimes.  (*Brewer, supra*, 65 Cal.App.5th at p. 213.)  " ' "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." ' " (*Ibid.*, citing *Ewing v. California, supra*, 538 U.S. at p. 21.)

Here, the Legislature has designated five years as the upper term for second degree robbery, which qualifies as a serious and violent felony.  (§§ 213, subd. (a)(2) ["[r]obbery of the second degree is punishable by imprisonment in the state prison for two, three, or five years"], 667.5, subd. (c)(9) [defining "violent felony" as including "any robbery"], 1192.7, subd. (c)(19) [defining "serious felony" to include "robbery or bank robbery"].) We cannot say that such punishment is grossly disproportional for an offense that involves the taking of personal property from another person, against his will, by means of force or fear.  (§ 211 [defining robbery].)

In the context of this specific case, defendant engaged in the exact same conduct only a year prior when he was initially charged with robbery in the assault case.  While the prosecutor eventually agreed to allow him to plead to an assault by means of force likely to produce great bodily injury and theft, rather than robbery, the court could properly consider that criminal history when determining that imposing the upper term in the robbery case was proportional to defendant's culpability in light of his current and

10

prior convictions for the same conduct. " ' " 'Recidivism in the commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses.' " ' " (*Brewer, supra*, 65 Cal.App.5th at pp. 218-219 [a defendant subject to an aggregate term of 63 years for multiple second degree robbery convictions was not subject to a lengthy sentence merely based on his current offenses, but also based on his recidivist behavior; court found the sentence did not constitute cruel and unusual punishment].)

Defendant's attempt to minimize his actions, claiming he would not have participated had it not been for the encouragement of his cohorts is not persuasive. A reasonable inference from the surveillance video is that defendant befriended E.M., who was obviously intoxicated, in order to later take advantage of him when he and his cohorts attacked E.M. and took his wallet. The fact that the victim only had roughly $60 in his wallet at the time of the assault does not lessen the dangerousness or violent nature of defendant's conduct.

Similarly, defendant's claim that he was intoxicated when he robbed E.M. is not supported by the record. While the surveillance video showed defendant and E.M. both drink from what appeared to be a bottle of liquor, no evidence established that defendant was intoxicated as a result. His claim otherwise is nothing more than pure speculation.

Given the totality of the circumstances, defendant's five-year sentence for second degree robbery, after suffering convictions for assault and theft for nearly identical behavior only a year prior, is not grossly disproportional to his culpability. The court did not abuse its discretion or violate the constitutional prohibitions against cruel and unusual punishment by imposing the upper term for robbing E.M.

11

## III. DISPOSITION

The judgment is affirmed.

/S/

RENNER, J.

We concur:

/S/

HULL, Acting P. J.

/S/

MURRAY, J.