Filed 7/15/25  P. v. Villa CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADAM VILLA,<br><br>    Defendant and Appellant. | C100738<br><br>(Super. Ct. No. 15F01261) |

Defendant Adam Villa appeals from sentencing after remand.  Defendant contends the trial court abused its discretion in (1) imposing the middle term for attempted robbery when he was entitled to the lower term under Penal Code[1] section 1170, subdivision (b)(6), and (2) declining to strike a firearm enhancement under section 1385, subdivision (c).  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2017, an amended information charged defendant, Frank Camacho, and Joshua Thomas Parrish with the premeditated attempted murder (§§ 664/187, subd. (a);

---

[1]    Undesignated statutory references are to the Penal Code.

1

count one) and attempted robbery in concert of G.H. (§§ 664/211, 213, subd. (a)(1)(A); count two), as well as alleged various firearm enhancements against defendants (§§ 12022.5, subd. (a)(1), 12022.53, subds. (b), (c)).[2]

In December 2017, a jury found defendant guilty of both counts and found true all firearm enhancements, but determined the attempted murder was not premeditated. The trial court sentenced defendant to the middle term of seven years on count one, one year consecutive on count two, 20 years on a firearm enhancement associated with count one (§ 12022.53, subd. (c)), six years eight months on the firearm enhancement associated with count two (stayed under section 654), for an aggregate sentence of 28 years in state prison.

On appeal, defendant argued his conviction for attempted murder must be reversed under Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015). In July 2020, this court modified the judgment by imposing and staying under section 654 a full term for attempted robbery and the associated firearm enhancement and affirmed the judgment as modified. (*People v. Villa* (July 14, 2020, C089392 [nonpub. opn.].) The California Supreme Court granted review and transferred the matter to us with directions to vacate our decision and reconsider the matter in light of Senate Bill No. 775 (Stats. 2021, ch. 551). (*People v. Villa* (May 9, 2022, C089392) [nonpub. opn.] (*Villa II*).)

In *Villa II*, we summarized the underlying facts as follows: "In February 2015, defendant, Parrish, and Camacho arrived at the victim's home under the pretext of purchasing marijuana. When the victim opened the door, defendant pointed a gun [at] his face. The victim, who was unarmed, began fighting with defendant over the gun. Meanwhile, the two other men, who also were armed, pushed their way inside. During the melee, the three intruders each shot at the victim a total of five to 10 times. The victim's

---

[2]    The information also charged Camacho with assault of E.M. (§ 245, subd. (b); count three) and alleged two firearm enhancements on that count (§§ 12022.5, subds. (a), (d)). The information further alleged firearm enhancements under section 12022.53, subdivision (d) on counts one and two against only Camacho and Parrish.

friend, who was visiting the victim at the time of the incident, testified at trial that he heard defendant say, '[E]verybody just chill out. We're here just to take [stuff].' Defendant, Parrish, and Camacho also beat up the friend. Eventually, the victim chased the three intruders outside and the men left in a waiting vehicle. [¶] The victim suffered gunshot wounds to his legs, abdomen, and bladder. His bladder had to be sewn up, and he was forced to wear a colostomy bag for a year and a half. He also was shot in his buttocks, and other shots grazed his stomach and back. These injuries required the victim to undergo seven or eight separate surgeries." (*Villa II*, *supra*, C089392.)

We vacated our prior decision, reversed defendant's attempted murder conviction and associated firearm enhancement, remanded the matter to afford the People the opportunity to retry the attempted murder conviction and firearm enhancement, and if the People declined to do so, instructed the trial to conduct a full resentencing on the remaining attempted robbery conviction and enhancement. (*Villa II*, *supra*, C089392.)

In July 2022, the People declined to retry defendant on the attempted murder conviction and enhancement.

In January 2024, defendant filed a sentencing brief with extensive exhibits, arguing that the trial court (1) could not impose the upper term for attempted robbery under the amendment to section 1170, subdivision (b)(2), and (2) must sentence defendant to the lower term under section 1170, subdivision (b)(6) because of his youth at the time of the offense (22 years old). Defendant further argued all firearm enhancements should be stricken under section 1385, because multiple enhancements were alleged in a single case (§ 1385, subd. (c)(2)(B)). Defendant also contended that sentencing on the various firearm enhancements must be limited to 10 years so that the aggregate sentence is less than 20 years (§ 1385, subd. (c)(2)(C)). Finally, defendant contended the enhancement was connected to defendant's prior victimization or childhood trauma and should be stricken (§ 1385, subd. (c)(2)(E)).

3

Defendant's exhibits included statements to an investigator by defendant's mother and siblings describing the neglect and emotional trauma defendant experienced from being raised by drug-addicted parents and then in foster care; a report from Dr. Anne McBride, who evaluated defendant in 2018 and found him at moderate risk for future violence, and in November 2023, reevaluated defendant, opining defendant was currently at low risk for future violence and finding that defendant's severe addictions to opioids, cannabis, and sedatives were in sustained remission (with maintenance therapy in the case of opioids); defendant's renunciation of affiliation with the Varrio Diamonds gang; records of the courses and therapeutic programs defendant participated in while in prison; general education development (GED) and reentry courses defendant took; his certificate of baptism; defendant's postrelease plans; and defendant's letters and a poem expressing remorse for his conduct.

In February 2024, the People filed a sentencing memorandum opposing dismissal of the firearm enhancement under section 1385, attaching as exhibits defendant's rule violation reports and his RAP sheet. The People contended dismissal would endanger public safety and was not in the interests of justice, arguing defendant committed a planned home invasion robbery while armed with a firearm and shot at the victim. The People conceded for purposes of section 1170, subdivision (b)(2) that the jury did not find any factors in aggravation. The People, however, asserted that the statute excepted prior convictions from the proof requirements for aggravating factors and argued the exception applied here, given defendant's felony conviction in 2013 for narcotics possession followed by the current conviction in 2017 for the more serious crime of attempted armed robbery. Lastly, the People argued defendant posed a danger to the public if released based on his conduct in prison, including an incident of sexual conduct with a visitor (November 2019), fighting (September 2019), possession of a controlled substance, and battery on an inmate (December 2021).

4

In February 2024, defendant filed a rebuttal brief, arguing defendant was not a danger to the public, as demonstrated by his participation in education and therapeutic opportunities in prison during the COVID pandemic, as well as his renouncement of gang affiliation. Defendant further argued that he had a stable support group and maintained ties with his wife, children, and siblings while in custody. Defendant contended that his rule violations for disobeying an order, failing to meet work expectations, and sexual contact with his wife did not show he was a potential danger to the public. Defendant maintained that the other incidents in prison— the last of which occurred in December 2021—were "stale."

On February 23, 2024, the trial court conducted a resentencing hearing. At the outset of the hearing, the trial court stated it had reviewed the sentencing briefs filed by the parties, including "every page" of the attached exhibits, as well as the probation department's original report.

After defendant read a statement and counsel for defendant and the People presented argument, the trial court explained its proposed sentence. The trial court first explained why it disagreed with defendant's argument for imposition of the use of a gun enhancement as opposed to the discharge of a firearm enhancement. Noting it had presided over defendant's trial, the trial court observed reducing the enhancement to gun use with a 10-year penalty as opposed to discharge of the weapon with a 20-year penalty whitewashed what defendant did. Defendant shot the victim in the buttocks while he was battling Parrish on the lawn. The trial court expressed difficulty in determining that the public would be safe given defendant's conduct, notwithstanding many months of rehabilitation. The trial court observed that, based on Dr. McBride's report, defendant participated in 30 to 50 educational programs during a one-and-one-half year period from the end of June 2020 to mid-November 2021, but after that, defendant and another inmate were involved in a "[t]wo-on-one" assault on another inmate in December 2021, during which defendant "revert[ed] to his prior self." The trial court found a similarity between this attack and the attack by defendant and his two codefendants on the victim in this case, i.e., "Three-on-one, two-on-one." The

5

trial court observed that defendant's rehabilitation really began in January 2022 and expressed concern that 26 months might not be sufficient to conclude the community would not be at risk if defendant were released.

The trial court also raised defendant's narcotics use. Defendant was addicted to marijuana and heroin at the time of the current offense. Five bindles of heroin were found in his cell that defendant admitted were his. The trial court expressed concern that the community would be at risk if defendant could not control his addiction.

Defense counsel argued that the substantial time, 26 months in the trial court's calculation, that defendant devoted to rehabilitation and was free from any rule violation did not tell the whole story and that defendant had become a person who did not want to harm other people and had learned to be part of the community. Counsel concluded: "So Mr. Villa is ready to step out and be part of us and rejoin his family and his children. And I'm asking the Court to see his rehabilitative efforts in that light, and I don't think that we can just put a strict timeline on that, and I'm not saying that that's absolutely what the Court is doing, but again, I think that [for] Mr. Villa, his time has come. He has gathered the tools he needs, and I'm asking the Court to resentence him to ten years -- and I'm not saying no sentence for the gun enhancement. That's not what I'm saying. I'm not saying no punishment -- to ten years for the gun enhancement for the gun, and whatever term the Court feels appropriate for the 211 part of the case, so be it. But to tell Mr. Villa that his efforts just aren't enough, when he's made such tremendous strides and has truly changed, I don't think reflects the reality of Adam Villa as he sits here today. And I'm asking the Court to sentence based on that."

The trial court assured defendant it did not consider what he had done for rehabilitation as not enough, but rather that he was not finished. The court said defendant should be congratulated for what he has done and commented that the number of people in the courtroom supporting defendant was impressive.

6

The trial court then read a statement relating its sentencing decision. The court recounted the facts of the crime. Based on these events, the trial court found that defendant had a preexisting relationship with the victim, a long-running association with Parrish and Camacho from their neighborhood and the Varrio Diamonds gang, and defendant and his then girlfriend picked up and dropped off Parrish and Camacho. Defendant not only knew the victim but also knew about the money generated by his marijuana business and the layout of his residence. Defendant and his codefendants were armed as a show of force to compel the turnover of the property they were seeking. Defendant's girlfriend served as the getaway driver.

Turning to Dr. McBride's report that defendant currently presented a low risk of danger after presenting a moderate risk in 2018, Dr. McBride concluded that defendant's violent behavior had decreased since his incarceration in 2015. The trial court noted, however, that in July 2017 defendant was involved in a fight with another inmate in jail, in September 2019 a guard observed defendant striking another inmate in the face and torso, and in December 2021 defendant and another inmate began striking another inmate in the face and chest and ignored a guard's directive to stop. Defendant had no other violent incidents but was cited in 2019 for sexual contact with his visiting wife and in 2020 for possession of five bindles of heroin hidden in an inhaler with his name on it. His other violations involved failure to meet work expectations and disobeying an order, both in 2021.

Against these factors, the trial court observed that in the past 26 months defendant renounced his gang affiliations, accepted religion, and explored his life and its relationship to the attack on G.H. But despite rehabilitative coursework that began in July 2020, defendant and another inmate assaulted another inmate in December 2021. The trial court therefore faced the question of whether the vicious and calculated nature of the crime and the immense injuries to G.H. were "swept away" by defendant's 26 months of rehabilitation.

The trial court found that, given the egregious nature of the underlying facts of the robbery and shooting, defendant's continued assaults in custody, his possession of heroin,

and his inability to obey institutional rules, shortening defendant's sentence by striking the firearm enhancement (§ 12022.53, subd. (c)) or reducing the enhancement to firearm use (§ 12022.5, subd. (a)) would endanger public safety and result in physical or serious injury to others, and, as such, it was not in the interest of justice to grant defendant's request to strike the firearm enhancement. The trial court acknowledged what it believed was the rebuttable presumption that the enhancement must be dismissed because of defendant's childhood trauma (§ 1385, subd. (c)(2)(E)) and being subject to multiple firearm enhancements (§ 1385, subd. (c)(2)(B)). But the court had already concluded that reducing defendant's sentence would endanger public safety, therefore it was not in the interest of justice to dismiss the enhancement based on these mitigating circumstances.

Regarding selection of defendant's term for attempted robbery, the trial court noted the parties' agreement that under section 1170, subdivision (b)(2) the court could not impose the upper term but only the middle term of three years or the lower term of one and one-half years. The court rejected defendant's assertion that the lower term must be imposed under section 1170, subdivision (b)(6)(B) due to his youth, observing defendant did not explain the connection between his age and the charged conduct. Further, defendant's conduct did not bear the hallmarks of youthful immaturity, i.e., "impetuosity and the failure to appreciate risks and consequences." The plan and execution of the attempted robbery created a reasonable inference that defendant appreciated the risks and consequences of this conduct and did not act impulsively without considerable thought and effort.

As for aggravating factors, the trial court found that the crime involved great violence (Cal. Rules of Court,[3] rule 4.421(a)(1)), the victim was lulled into complacency by a telephone call from defendant that he would come by without mentioning two others coming with him (rule 4.421(a)(3)), defendant occupied a position of leadership or dominance over the other participants in the crime (rule 4.421(a)(4)), the method and

---

[3]    Undesignated rule references are to the California Rules of Court.

manner in which the crime was executed showed preplanning (rule 4.421(a)(8)), the robbery was designed to obtain a valuable commodity, i.e., the marijuana or the money it generated (rule 4.421(a)(9)), and defendant took advantage of a position of trust and his prior relationship with the victim to lure him to open the door of his residence (rule 4.421(a)(11)). The trial court further found that defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)), and defendant was on probation at the time of the crime (rule 4.421(b)(4)). The trial court concluded that aggravating factors outweighed the mitigating factor of defendant's youth such that the lower term would not be in the interests of justice.

Finally, noting that defendant did not seek a lower term in his briefs based on childhood trauma under section 1170, subdivision (b)(6)(A), the trial court nonetheless addressed the issue. The trial court found that, based on defendant's personal history recounted to Dr. McBride and statements of defendant's family members, defendant did suffer psychological, physical or childhood trauma that contributed to commission of the offenses. However, the same aggravating factors outweighed the mitigating factor of childhood trauma, such that the lower term would not be in the interests of justice.

Accordingly, the trial court sentenced defendant to the middle term of three years for attempted robbery plus 20 years for the firearm enhancement (§ 12022.53, subd. (c)), for a total term of 23 years in state prison. The court imposed and suspended 10-year sentences on the other firearm enhancements (§§ 12022.5, subd. (a); 12022.53, subd. (b)).

Defendant timely appeals.

DISCUSSION

I

*Middle Term Sentence*

Defendant contends the trial court erred in imposing the middle term rather than the lower term. Defendant maintains the lower term was the presumptive term given the presence of mitigating factors enumerated in section 1170, subdivision (b)(6), i.e., youth and

9

childhood trauma, and the trial court lacked discretion to determine that aggravating factors outweighed mitigating factors unless the aggravating factors were established consistent with section 1170, subdivision (b)(2). Alternatively, defendant claims that the trial court erred because the aggravating factors did not outweigh mitigating factors such that the middle term was in the interests of justice.

We review a trial court's sentencing decisions for abuse of discretion. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 847.) "A court abuses its sentencing discretion when it acts arbitrarily and capriciously, relies on improper matter in reaching its decision, or is unaware of the scope of its discretion so that it does not exercise informed discretion at all." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765.) On appeal, a judgment of the trial court is presumed correct, and a party attacking the judgment must affirmatively demonstrate prejudicial error. (*People v. Garza* (2005) 35 Cal.4th 866, 881.)

Section 1170 generally provides for midterm sentences and prohibits upper term sentencing unless the factors in aggravation are stipulated by the defendant, proven to a fact finder beyond a reasonable doubt, or relate to a prior conviction that is established by a certified record of conviction. (§ 1170, subd. (b)(1)-(3).) Section 1170 also contains a presumption in favor of the lower term if certain mitigating circumstances were a contributing factor in the commission of an offense, including if the defendant is younger than 26 years old (or was at the time of the crime) or suffered childhood trauma that contributed to commission of the offense. (*People v. Knowles*, *supra*, 105 Cal.App.5th at p. 765; § 1170, subd. (b)(6)(A), (B); see also rules 4.423(b)(6) [circumstances in mitigation include when a defendant is under 26 years of age, or was under 26 years of age when the offense was committed], 4.423(b)(3) & (4) [circumstances in mitigation include when a defendant experienced childhood trauma that "was a factor in the commission of the crime," or the "commission of the current offense is connected to the defendant's prior victimization or childhood trauma"].)

Rule 4.421 cited by the trial court at the sentencing hearing sets forth circumstances in aggravation that a court may consider in sentencing. If a presumptive lower term factor contributed to an offense, the trial court may impose the middle term only if it finds that the aggravating circumstances in rule 4.421 outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice. (§ 1170, subd. (b)(6).)

To begin with, we find no merit to defendant's argument that the trial court erred in imposing the middle term because there were no aggravating factors properly before the court. Unlike the aggravating factors needed to impose the upper term, the aggravating factors required to impose the middle term need not be established pursuant to the heightened evidentiary requirements set forth in section 1170, subdivision (b)(2) and (3). (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 202-205.) Instead, such factors need only be established by a preponderance of the evidence by the trial judge. (*Ibid.*) We disagree with defendant's argument that evidentiary requirements for the upper term apply where, as here, defendant requests the lower term based on mitigating circumstances enumerated in section 1170, subdivision (b)(6). As courts have explained, the evidentiary requirements set forth in section 1170, subdivision (b)(2) and (3) relate "solely to the prerequisites for imposing the *upper term*" and therefore do not apply when a court is considering whether the lower term would be " 'contrary to the interests of justice' " under section 1170, subdivision (b)(6). (*People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 928-929.)

Applying the relevant standard, we conclude the trial court did not abuse its discretion in weighing aggravating factors against mitigating factors and imposing the middle term. The trial court considered defendant's argument that he was entitled to the lower term based on his youth, noting, however, that "defendant's conduct in this case bears none of the hallmarks of youth-like immaturity, impetuosity and the failure to appreciate the risks and consequences of his actions." To the contrary, the court found that "notwithstanding his age, the defendant clearly exhibited planning and sophistication, not

11

disorganization and the impulsivity of youth, in his efforts in executing the attempted robbery, and, therefore, the statutory mandate in Penal Code section 1170(b)(6) does not apply to the defendant, as he has not made an initial showing that his age was a contributing factor in the offense." (*People v. Fredrickson* (2023) 90 Cal.App.5th 984, 993 [the " 'contributing factor' requirement is part of the [defendant's] initial showing" for application of § 1170, subd. (b)(6)].) The trial court further found that, to the extent defendant met his initial burden, "the aggravating factors far outweigh the mitigating factors, such that the lower term would be contrary to the interest of justice." The trial court made the same finding regarding defendant's childhood trauma which the court acknowledged did contribute to defendant's commission of the offense. As described above, the aggravating factors the court considered included six factors related to the crime (rule 4.421(a)(1), (3), (4), (8), (9), (11)) and two factors related to defendant (rule 4.421(b)(1), (4)). Defendant has not shown that the trial court's decision that six factors in aggravation outweighed two in mitigation was arbitrary and capricious, and therefore an abuse of discretion. (*People v. Knowles*, *supra*, 105 Cal.App.5th at p. 765.) It has long been held that a single aggravating factor is sufficient to justify a sentencing choice. (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.)

Given our conclusion, we need not address defendant's argument that reversal is required because he suffered prejudice.

## II

### *Firearm Enhancement*

Defendant contends the trial court abused its discretion in declining to strike the firearm enhancement by "failing to give great weight to [defendant's] childhood trauma, and where the record lacked clear and convincing evidence that his release would endanger public safety."

We review denial of a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion and its factual findings for substantial evidence. (*People v. Mendoza*

(2023) 88 Cal.App.5th 287, 298; *People v. Carmony* (2004) 33 Cal.4th 367, 371; *In re White* (2020) 9 Cal.5th 455, 470.) Substantial evidence exists if, reviewing " 'the whole record in the light most favorable to the judgment[,]' " we conclude " ' " ' " 'the circumstances reasonably justify the trier of fact's findings . . . .' " ' " ' " (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 774.) We also review the trial court's determination whether dismissal would endanger public safety under section 1385, subdivision (c)(2) for abuse of discretion. (*Mendoza*, at p. 298; *People v. Gonzalez* (2024) 103 Cal.App.5th 215, 225.) "The abuse of discretion standard is highly deferential. When, ' "as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*Mendoza*, at p. 298; see also *Carmony*, at p. 377 ["[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"]; *People v. Garcia* (2024) 101 Cal.App.5th 848, 857 [a trial court's "risk finding" that dismissal of an enhancement would endanger public safety "will be upheld 'if it falls within "the bounds of reason, all of the circumstances being considered" ' "].)

Taking defendant's second claim first, we reject the premise that section 1385, subdivision (c)(2) required the trial court to find *by clear and convincing evidence* that dismissal of the firearm enhancement would endanger public safety.

Section 1385, subdivision (c)(2) provides: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a

13

likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

Thus, section 1385, subdivision (c)(2) "provides that in determining whether to dismiss an enhancement 'under this subdivision,' the court must consider nine listed mitigating circumstances if proven by the defendant (§ 1385, subd. (c)(2)(A)-(I)), 'unless the court finds that dismissal of the enhancement would endanger public safety' (*id.*, subd. (c)(2)). That provision means that if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances. (§ 1385[, subd. ](c)(2).)" (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 296, fn. omitted.) While section 1385, subdivision (c) mandates the trial court give "great weight" to enumerated factors, contrary to defendant's claim, the legislative history shows that the Legislature amended the statute to eliminate reference to a requirement that the court find by clear and convincing evidence that dismissal of an enhancement would endanger public safety, replacing it with the flexible discretionary language that now appears in section 1385, subdivision (c)(2). (See *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1096-1097; *People v. Anderson* (2023) 88 Cal.App.5th 233, 240.) Moreover, section 1385, subdivision (c)(2) "does not require the trial court to consider any particular factors in determining whether 'there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (*Mendoza*, at p. 299.)

Here, the trial considered several factors in deciding whether dismissing the enhancement would endanger the public. The trial court considered the calculation and planning that went into the current offense, the violence of its execution that included defendant's shooting at the victim, and the terrible injuries the victim suffered. The court also considered defendant's long-term, severe addiction to heroin and other drugs and the discovery of heroin concealed in his cell, raising concerns that defendant could not control his addiction if released into the community. Defendant was involved in several violent incidents while incarcerated, including a two-on-one assault on an inmate that occurred after

14

a year and one-half of rehabilitation during which defendant was free from rules violations. The trial court acknowledged defendant's subsequent efforts at rehabilitation leading to 26 months before the sentencing hearing without a rules violation. But given the nature of the crime, defendant's assaults in prison, and his drug addiction, the trial court found it would endanger public safety to dismiss the firearm enhancement and release defendant into the community. Defendant has not shown this determination was an abuse its discretion.

Because we conclude the trial court did not abuse its discretion in finding dismissal would endanger public safety, defendant's second claim fails that the trial court did not give great weight to defendant's childhood trauma. Having found that dismissal of the enhancement would endanger the public, the trial court was not required to consider mitigating circumstances listed in the statute. (*People v. Mendoza*, *supra*, 88 Cal.5th at p. 296.)

DISPOSITION

The judgment is affirmed.

/s/
_____
Mesiwala, J.

We concur:

/s/
_____
Robie, Acting P. J.

/s/
_____
Feinberg, J.

15