Filed 1/3/25  P. v. Mota CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JORGE ELOY MOTA,<br><br>    Defendant and Appellant. | F087940<br><br>(Super. Ct. No. MCR069134)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Peña, Acting P. J., Smith, J. and DeSantos, J.

This is an appeal from resentencing.  Defendant Jorge Eloy Mota contends that his sentence must be vacated and the matter remanded for resentencing because the trial court abused its discretion when it reimposed defendant's 180-year-to-life sentence. Defendant also contends the matter must be remanded for the court to correctly calculate the days of actual custody credit and amend the minute order accordingly.  The People disagree that the imposition of the 180-year-to-life sentence is an abuse of discretion and argue, as a threshold issue, that defendant forfeited the claim.  Next, the People agree the trial court miscalculated the days of actual custody credit.  However, the People ask our court to direct the trial court to amend the abstract of judgment to show 1,179 days of total credit for time served by defendant between his initial sentencing and the date of his resentencing.  We remand for the trial court to amend the abstract of judgment to reflect the total presentence time credits of 1,180 days as of the date of resentencing.  In all other respects, the judgment is affirmed.

## PROCEDURAL SUMMARY

On July 2, 2021, the Madera County District Attorney filed an information charging defendant with forcible oral copulation of B. Doe (Pen. Code, § 287, subd. (c)(2)(A);[1] count 1); sodomy by use of force of B. Doe (§ 286, subd. (c)(2)(A); count 2); forcible oral copulation of B. Doe (§ 287, subd. (c)(2)(A); count 3); forcible rape of A. Doe (§ 261, subd. (a)(2); count 4); forcible rape of A. Doe (§ 261, subd. (a)(2); count 5); and six counts of lewd acts upon D. Doe, a child under the age of 14 years (§ 288, subd. (a); counts 6–11).  It was further alleged that defendant committed the sexual offenses against multiple victims, and upon a victim who is a child under 14 years of age, for purposes of section 667.61, subdivisions (b) and (j)(2).  (*People v. Mota* (July 12, 2023, F083566 [nonpub. opn.] (*Mota I*).)

---

[1]     All statutory references are to the Penal Code.

2.

On October 13, 2021, the jury found defendant guilty on counts 4 through 11 and hung on counts 1 through 3.  The jury found true the allegations of multiple victims and a victim being a child under 14 years of age.  The trial court declared a mistrial on counts 1 through 3.  (*Mota I*, *supra*, F083566.)

On November 17, 2021, defendant was sentenced to the aggregate indeterminate term of 180 years to life, as follows:  on count 4, 15 years to life; on count 5, 15 years to life, consecutive, pursuant to section 667.61, subdivision (b) (multiple victims); on each of counts 6 through 11, 25 years to life, consecutive, pursuant to section 667.61, subdivision (j)(2).  (*Mota I*, *supra*, F083566.)

On November 18, 2021, defendant filed a notice of appeal.  (*Mota I*, *supra*, F083566.)

On July 7, 2023, we remanded the case for resentencing because "the record does not conclusively show whether the trial court would have exercised its discretion to impose concurrent or consecutive terms … in counts 6 through 11 if it had known that it had such discretion …."  (*Mota I*, *supra*, F083566.)

On November 16 and 17, 2023, the probation department filed supplemental information regarding its sentencing recommendation.

On December 15, 2023, defendant filed a sentencing memorandum and factors in mitigation.

On March 22, 2023, defendant filed a motion to strike the section 667.61 "enhancements."

On April 2, 2024, the prosecution filed opposition.

On April 23, 2023, defendant filed a reply.

On April 24, 2023, the resentencing hearing was held.

The trial court, finding that defendant was a "serious danger to others," denied defendant's motion and reimposed the 180-year-to-life sentence.

On April 25, 2024, a notice of appeal was timely filed.

3.

## FACTUAL SUMMARY[2]

"Defendant lived in a house with his wife, Guadalupe,[3] his son, Carlos, Carlos's wife, Noemi, Carlos and Noemi's two sons, Eduardo and Carlos, Jr., and Noemi's daughter from a previous relationship, D. Doe. Defendant's other son, Mario, his wife, A. Doe, and their two young children also lived with the family some of the time. D. Doe shared a room with her brothers; her mother, Noemi, and her stepdad, Carlos, shared another bedroom; Mario, A. Doe and their children shared a bedroom; and defendant and Guadalupe shared the last bedroom. The family members first lived together in a house in Madera, before moving together to a house in Chowchilla. Defendant was employed at a chicken ranch nearby the Chowchilla house."

### *Counts 4 and 5*

"Defendant was A. Doe's father-in-law.

"In 2016, A. Doe was residing at defendant's Madera house with her husband and defendant's son, Mario, and their oldest child. Defendant entered her bedroom when no one else was home and forced her to have sex with him while her daughter, an infant at the time, was asleep in her playpen in the same room.

"In 2017, A. Doe, Mario, their daughter, and newborn son were living in defendant's Chowchilla house. Defendant entered A. Doe's bedroom after she got out of the shower while both her toddler daughter and infant son were asleep in the same room and forced A. Doe to have sex with him."

### *Counts 6 through 11*

"D. Doe was born on May 30, 2009. Defendant was D. Doe's stepgrandfather.

---

**2**    The factual summary is taken from the opinion in *Mota I*, *supra*, F083566.

**3**    Pursuant to California Rules of court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

"When D. Doe was between eight and 10 years old, she, her brothers, her mother, and Carlos moved to a nearby trailer. Defendant continued to live in the Chowchilla house.

"Later during the same year that D. Doe moved out of defendant's Chowchilla house to the trailer, Noemi and Carlos divorced. D. Doe moved with her mother and brothers to Madera. Carlos moved back into defendant's Chowchilla house. Carlos continued to see D. Doe and her brothers regularly. He would take them most weekends, from Friday night to Sunday, to stay with him at defendant's Chowchilla house. These overnight visits continued until September 2020."

### Defendant's Lewd Acts Against D. Doe

"When D. Doe lived in defendant's Chowchilla house, defendant would call her into his bedroom at night, as the rest of the family slept.[4] When she arrived in defendant's room, he would start touching her with his hand on her 'three private parts': on her chest and 'the private parts she used for peeing and pooping,' both under and over her clothes. D. Doe usually wore a T-shirt, shorts, underwear, and a training bra to bed.[5] This occurred approximately five nights a week.

"While D. Doe lived at defendant's Chowchilla house, her school bus would occasionally drop her off at the chicken ranch where defendant worked, so that defendant could drive her home from there. On several occasions, after D. Doe was dropped off at the chicken ranch, defendant touched her chest, bottom, and the area of her vagina, over her clothing in his office.

"When D. Doe was 11 years old and no longer lived at the Chowchilla house with defendant, she told a neighbor child about defendant's conduct. Two months later, in

---

[4]     D. Doe testified that she did not know where defendant's wife, Guadalupe, was when defendant would call her to his bedroom.

[5]     Noemi, D. Doe's mother, testified that D. Doe began wearing a kid's sports bra or training bra at approximately four and a half years old.

September 2020, she also told her mother about defendant's conduct, because the neighbor child was 'using it against [her].' D. Doe also told her mother about an incident when she was 11 years old and spending the night at defendant's Chowchilla house. She was laying on the couch with her eyes closed. When she opened her eyes, defendant was standing above her staring at her. He did not touch her on that occasion."

## DISCUSSION

### I.      ABUSE OF DISCRETION

Defendant contends the trial court abused its discretion when it reimposed the indeterminate 180-year-to-life term at resentencing. He argues his sentence violates both the federal Constitution's prohibition against cruel and unusual punishment and the California Constitution's prohibition against cruel or unusual punishment because it is disproportionate to his nonhomicide offenses, considering his lack of criminal record. He further contends the sentence is " ' "grossly disproportionate" ' " when compared to punishments imposed in California for more serious offenses and to punishments imposed in other jurisdictions for similar conduct. The People disagree. We agree with the People.

#### A.      *Background*

When defendant was initially sentenced, the trial court imposed an indeterminate 180-year-to-life prison sentence. (See *Mota I*, *supra*, F083566.)

In *Mota I*, we affirmed defendant's convictions, but vacated the sentence and remanded for resentencing because the record showed the trial court was not aware of its discretion to impose concurrent or consecutive terms on the six counts of lewd acts upon a child under the age of 14 years (counts 6–11), and did not "conclusively show whether the trial court would have exercised its discretion to impose concurrent or consecutive terms on [these counts] if it had known that it had such discretion .…" (*Mota I*, *supra*, F083566.)

6.

On remand, the trial court requested a supplemental report from the probation department. In the supplemental report, the probation officer recommended full and consecutive sentences on the two forcible rape convictions (counts 4 & 5) and on two counts of lewd acts upon a child under the age of 14 years. The probation officer recommended concurrent sentences on the remaining four counts of lewd acts upon a child under the age of 14 years. It also stated, "[a]n argument could certainly be made for consecutive sentences for these [c]ounts as well due to the emotional damage inflicted on … the victims and certainly would be if such a substantial amount of time, which ensures the safety of the victims and the community, was not being recommended."

Defendant filed a motion to strike enhancements under section 1385, subdivision (c). The district attorney filed an opposition to defendant's motion. Defendant filed a reply to the district attorney's opposition.

At resentencing, the trial court heard arguments from both parties.

Defense counsel asked the court "to impose the least amount of time possible." Defense counsel argued defendant had a lack of prior criminal history and that, though the offenses committed were "serious and violent," defendant had "shown great remorse through the letter that he wrote to the [c]ourt .…"

The prosecution argued that, "[d]espite [defendant] not having a prior criminal record," defendant committed the sex offenses against "multiple victims over a prolonged period of time," and that "[g]iven the multiple incidents, the multiple victims, the prolonged period of time, and the nature of the offenses, … [defendant] would still pose a risk to the public and public safety if he is ever released .…"

The trial court denied the motion to strike enhancements under section 1385, subdivision (c), finding that section 667.61 is an alternative sentencing scheme and the section 667.61 allegations were not enhancements. (See *People v. Mancebo* (2002) 27 Cal.4th 735, 741–742.) The court also stated it would deny the motion to strike

7.

enhancements under section 1385, subdivision (c), even if the section 667.61 allegations were enhancements, stating,

> "We have more than one victim. We have counts of rape. We have child molest[ation]. We have a prolonged period of time where these acts occurred .… We have the fact that he committed these assaults on his grandchild, on his daughter-in-law. That shows real heinous actions on his part. And to me, it shows that he is a serious danger to others."

The trial court then stated it was aware of having discretion to impose concurrent or consecutive terms on the six counts of lewd acts upon a child under the age of 14 years (counts 6–11). The court stated it would exercise its discretion to impose consecutive terms on all six counts, stating,

> "There are two separate victims here. Each of these acts are separate occurrences. He took advantage of a position of trust here. And like I said, these are heinous acts."

The trial court imposed a total indeterminate 180-year-to-life prison term, as follows: two 15-year-to-life terms for each of the forcible rape convictions (counts 4 & 5; § 667.61, subd. (b)), plus six 25-year-to-life terms for each of the six counts of lewd acts upon a child under the age of 14 years (counts 6–11; § 667.61, subd. (j)(2).)

### B. Law

This court reviews the trial court's decision to impose consecutive terms for abuse of discretion. (*People v. Bradford* (1976) 17 Cal.3d 8, 20.) "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)

"The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized

nor warranted in substituting its judgment for the judgment of the trial judge."
[Citations.]' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977–978.)

California Rules of Court,**6** rule 4.425 lists "[f]actors affecting the decision to impose consecutive rather than concurrent sentences:"

> "(a) **Facts relating to crimes** Facts relating to the crimes, including whether or not:
>
>> "(1) The crimes and their objectives were predominantly independent of each other;
>>
>> "(2) The crimes involved separate acts of violence or threats of violence; or
>>
>> "(3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.
>
> "(b) **Other facts and limitations** Any circumstances in aggravation or mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial, may be considered in deciding whether to impose consecutive rather than concurrent sentences, except:
>
>> "(1) A fact used to impose the upper term;
>>
>> "(2) A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170[, subdivision] (h); and
>>
>> "(3) A fact that is an element of the crime." (Rule 4.425.)

"[G]reater culpability warrants consecutive terms." (*People v. Coelho* (2001) 89 Cal.App.4th 861, 888.) "Only one criterion or factor in aggravation is necessary to support a consecutive sentence." (*People v. Davis* (1995) 10 Cal.4th 463, 552.)

The trial court's sentencing discretion "is neither arbitrary nor capricious, but is an impartial discretion, guided and controlled by fixed legal principles, to be exercised in conformity with the spirit of the law .…" (*People v. Warner* (1978) 20 Cal.3d 678, 683,

---

**6** All further references to rules are to the California Rules of Court.

superseded by statute, as stated in *People v. Douglas* (1999) 20 Cal.4th 85, 91–92.) The court should not be guided solely by antipathy for the effect that the sentencing rules and policies would have on a defendant. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 531.)

### C. Analysis

### Forfeiture

The People first argue defendant forfeited his claim because defense counsel did not object at resentencing that the 180-year-to-life sentence constituted cruel and/or unusual punishment. Defendant concedes defense counsel did not expressly object to the imposition of the 180-year-to-life sentence or object that it was cruel and/or unusual. However, he argues the failure to object did not result in forfeiture of the claim because, "given the argument for concurrent sentences made by defense counsel in the motion and at the sentencing hearing, it is clear that [defendant] objected to imposition of the sentence," so "[t]he trial court was well aware that [defendant] was not in agreement with such imposition."

"A defendant's failure to contemporaneously object that his sentence constitutes cruel and unusual punishment forfeits the claim on appellate review. [Citations.] A claim a sentence is cruel and unusual is forfeited on appeal if it is not raised in the trial court, because the issue often requires a fact-bound inquiry." (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247; see *People v. Norman* (2003) 109 Cal.App.4th 221, 229.)

Accordingly, in light of defense counsel's failure to object to the trial court's imposition of the 180-year-to-life sentence as cruel and/or unusual punishment, we conclude defendant forfeited this claim.

### Cruel and Unusual Punishment

Regardless of whether the claim was forfeited, however, the trial court did not abuse its discretion by imposing consecutive terms on all six section 288, subdivision (a) convictions. The court had discretion to order the terms imposed on the six counts of

lewd acts upon a child under the age of 14 years (counts 6–11; § 288, subd. (a)) to run concurrently or consecutively.  (*Mota I*, *supra*, F083566.)  Defendant's sex offenses were not committed in a single period of aberrant behavior.  As the court stated, there were two separate victims, and the acts underlying each conviction were separate and occurred over a prolonged period of time.  Accordingly, we conclude the court's decision to impose consecutive terms was not an abuse of discretion.

### *Federal Constitution*

"A punishment violates the Eighth Amendment if it involves the 'unnecessary and wanton infliction of pain' or if it is 'grossly out of proportion to the severity of the crime.' " (*People v. Retanan* (2007) 154 Cal.App.4th 1219, 1230.)  When the length of a particular sentence is challenged, "the court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." (*Graham v. Florida* (2010) 560 U.S. 48, 59 (*Graham*).)

The calculus of whether a sentence is "grossly disproportionate" "must begin by comparing the gravity of the offense and the severity of the sentence." (*Graham*, *supra*, 560 U.S. at p. 60.)  "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." (*Rummel v. Estelle* (1980) 445 U.S. 263, 272.)  Consequently, the United States Supreme Court has upheld life sentences imposed under state law for such offenses as possession of a large quantity of cocaine (*Harmelin v. Michigan* (1991) 501 U.S. 957, 961), theft of a few golf clubs (*Ewing v. California* (2003) 538 U.S. 11, 18), and obtaining money by false pretenses (*Rummel*, at p. 266).  If " 'in the rare case' " an " 'inference of gross disproportionality' " can be drawn, "the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." (*Graham*, at p. 60.)  It is only where "this comparative analysis 'validate[s] an initial judgment that [the]

11.

sentence is grossly disproportionate,' " that the sentence will be found unconstitutional under the Eighth Amendment. (*Graham*, at p. 60)

Here, defendant's nonexistent prior criminal record is a factor in his favor. On the other side of the scale, defendant's multiple sexual offenses committed over approximately five years and the abuse of a position of trust against two vulnerable victims, one of whom was under 14 years old, and both of whom were family members that he lived with, weigh heavily against him. A comparison of all the relevant factors in this case does not ineluctably lead to an " 'inference of gross disproportionality.' " (*Graham*, *supra*, 560 U.S. at p. 60.) While admittedly a severe sentence, we cannot say that the 180-year-to-life term violates the Eighth Amendment.

### *California Constitution*

"California affords greater protection to criminal defendants by prohibiting cruel '*or*' unusual punishment," unlike the federal Constitution, which prohibits cruel *and* unusual punishment. (*People v. Haller* (2009) 174 Cal.App.4th 1080, 1092, italics added.)

The California Constitution provides: "Cruel or unusual punishment may not be inflicted or excessive fines imposed." (Cal. Const., art. I, § 17.) A sentence may violate the state Constitution's prohibition on cruel or unusual punishment if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, superseded by statute, as stated in *In re Palmer* (2021) 10 Cal.5th 959, 974 (*Palmer*).) "Whether a particular punishment is disproportionate to the offense is, of course, a question of degree. The choice of fitting and proper penalties is not an exact science, but a legislative skill involving an appraisal of the evils to be corrected, the weighing of practical alternatives, consideration of relevant policy factors, and responsiveness to the public will; in appropriate cases, some leeway for experimentation may also be permissible. The judiciary, accordingly, should not interfere in this process unless a

statute prescribes a penalty 'out of all proportion to the offense' [citations], i.e., so severe in relation to the crime as to violate the prohibition against cruel or unusual punishment." (*Id*. at pp. 423–424.)

"A petitioner attacking his sentence as cruel or unusual must demonstrate his punishment is disproportionate in light of (1) the nature of the offense and the defendant's background, (2) the punishment for more serious offenses, or (3) punishment for similar offenses in other jurisdictions." (*In re Nunez* (2009) 173 Cal.App.4th 709, 725, citing *In re Lynch*, *supra*, 8 Cal.3d at pp. 425, 431, 436, superseded by statute, as stated in *Palmer*, *supra*, 10 Cal.5th at p. 974.) "In examining the nature of the offense, we ' "look at the totality of the circumstances, including motive, the way the crime was committed, the extent of the defendant's involvement, and the consequences of defendant's acts." ' [Citation.] In examining the nature of the offender, we consider ' "whether 'the punishment is grossly disproportionate to the defendant's individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind.' " ' " (*People v. Gomez* (2018) 30 Cal.App.5th 493, 500.)

"There exists a strong public policy to protect children of tender years." (*People v. Olsen* (1984) 36 Cal.3d 638, 646.) "[L]ewd conduct on a child may not be the most grave of all offenses, but its seriousness is considerable." (*People v. Christensen* (2014) 229 Cal.App.4th 781, 806.) Sexual offenses against minors "may have lifelong consequences to the well-being of the child." (*Ibid*.) While these consequences result in part from the acts that constitute the sexual assault itself, the emotional and psychological damage to a child assaulted by an adult in a position that would naturally engender a child's trust is now well known. Section 667.61 reflects the Legislature's "intolerance toward child sexual abuse" (*People v. Wutzke* (2002) 28 Cal.4th 923, 931) and "persons convicted of sex crimes against multiple victims within the meaning of section 667.61, subdivision (e)(5) 'are among the most dangerous' from a legislative standpoint." (*Id*. at pp. 930–931.)

13.

We cannot draw an inference of gross disproportionality from a comparison of defendant's crimes to the sentence imposed. Defendant was an adult and D. Doe's stepgrandfather, as well as A. Doe's father-in-law, and lived with both victims. He took advantage of both victims and abused his authority as both an adult and as a parental figure. (Rule 4.421(a)(3) & (11); *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413 [victim's vulnerability and the defendant's abuse of trust aggravating factors for the offense of forcible lewd acts on a child under 14].)

Although defendant had no prior criminal record, defendant was an older adult when he committed the offenses and presumably knew that his conduct was unlawful. There is no indication in the record that defendant had any sort of cognitive disabilities that would affect his knowledge of right versus wrong. Although his lack of a criminal record is favorable to him, it does not outweigh the other substantial aggravating factors. (See *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 845 [lack of prior record not determinative when "seriousness of the crime and the circumstances surrounding its commission substantially outweigh these factors"], disapproved on other grounds in *People v. Dalton* (2019) 7 Cal.5th 166, 214.)

Defendant argues his punishment is grossly disproportionate to the punishment imposed because, even if he " 'is not a worthy member of society … when his misdeeds are compared with those of the far too many violent recidivists in this state, he is not the worst we have seen,' " and is thus not deserving of a sentence of 180 years to life. He argues "[i]t cannot be gainsaid that someone who commits first degree murder has committed a more serious offense than someone who has committed eight sex-related offenses, yet the murderer will receive a sentence of 25 years-to-life, 155 years less than [defendant] …, especially taking into consideration [defendant]'s lack of recidivism." But this analogy is inapt. Defendant is asking us to compare the punishment imposed for his multiple sex offenses, committed over a nearly five-year period, against multiple vulnerable victims, to the punishment imposed for a single violation of one statute.

Defendant here was a predatory, repeat offender, who was charged after committing multiple offenses over several years, and has not yet reoffended because he has been in custody since he was charged. Accordingly, his punishment neither shocks the conscience nor offends fundamental notions of human dignity.

Defendant also argues in his reply that his sentence is the effective equivalent of a life without parole (LWOP) sentence, the extreme nature of which does not fit defendant nor his crimes. He relies on *State v. Johnson* (La. 2016) 207 So.3d 1101, 1105, which found LWOP did not fit the defendant nor the crimes, where the defendant had three prior felonies for simple burglary, possession of heroin, and distribution of cocaine. (*Id*. at p. 1105.) The *Johnson* court stated, "Notably, the provision under which [the defendant] was sentenced subjected him to the same sentence as repeat violent offenders and sexual predators, despite his history of non-violence." (*Ibid*.) However, *Johnson* is distinguishable, as defendant here is a sexual predator, exactly the type of criminal against which the *Johnson* court contrasted the defendant there, where it found the LWOP sentence in that case was too severe.

Furthermore, "[t]he power to define crimes and prescribe punishments is a legislative function." (*People v. Young* (1992) 11 Cal.App.4th 1299, 1308.) We play a limited role in overseeing that function and pay "great deference … to legislation designed to protect children, who all too frequently are helpless victims of sexual offenses." (*In re Wells* (1975) 46 Cal.App.3d 592, 599, superseded by statute, as stated in *Palmer*, *supra*, 10 Cal.5th at p. 974.) Moreover, the trial court noted the sex offenses were "heinous" because defendant, taking advantage of a position of authority and trust, committed the offenses on his stepgrandchild and daughter-in-law.

The factors provided by the trial court were well within the bounds of reason for the imposition of consecutive terms. (See *People v. Brown* (1994) 28 Cal.App.4th 591, 601–602; see also *People v. Davis*, *supra*, 10 Cal.4th at p. 552; *People v. Coelho*, *supra*, 89 Cal.App.4th at p. 888.)

## II.    ACTUAL CUSTODY CREDIT

Defendant next contends remand is required for the trial court to calculate the days of actual custody credit and amend the abstract of judgment.  The People agree that the trial court miscalculated the days of actual custody credit.  However, the People ask our court to amend the abstract of judgment to show 1,179 days of total credit for time served by defendant between the date of his initial sentencing and the date of resentencing.  We remand for the trial court to amend the abstract of judgment to reflect the total presentence time credits of 1,180 days as of the date of resentencing.

Section 2900.1 provides,

> "Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts."  (§ 2900.1.)

Here, at resentencing, the trial court did not calculate the days defendant spent in custody between his initial sentencing and his resentencing.  Rather, at the resentencing hearing, the trial court stated, "[A]s to time credits, as of November 18th, 2021, time credits were … 253 actual, 37 conduct for a total of 290 total conduct—total credits as of November 18th, 2021."  The abstract of judgment filed after resentencing shows 290 total credits, consisting of 253 actual and 37 conduct, and "04-24-2024" as the "Date Sentence Pronounced."

The parties agree, as do we, that because defendant's initial sentence was vacated and the matter remanded for resentencing, the abstract should also include the days defendant spent in custody following the initial sentencing on November 17, 2021, to the resentencing on April 24, 2024.  (See *People v. Buckhalter* (2001) 26 Cal.4th 20, 37 ["the trial court, having modified defendant's sentence on remand, was obliged, in its new abstract of judgment, to credit him with all *actual* days he had spent in custody, whether in jail or prison, up to that time"], citing § 2900.1.)  Accordingly, defendant was in

custody for 890 days between November 17, 2021, and April 24, 2024. However, defendant was not entitled to presentence conduct credit under section 2933.1 for time spent in custody while awaiting resentencing. (See *Buckhalter*, at pp. 40–41.)

At resentencing, the trial court also mistakenly stated defendant's initial sentencing occurred on November 18, 2021. However, defendant's initial sentencing occurred on November 17, 2021. (*Mota I*, *supra*, F083566.) Accordingly, defendant spent 890 days in custody between his initial sentencing on November 17, 2021, and his resentencing on April 24, 2024.[7]

Because defendant accrued 290 days of credit before resentencing, consisting of 253 actual and 37 conduct credits, and 890 days of actual custody credit between the initial sentencing and resentencing, he is entitled to a total of 1,180 days of presentence time credit. Accordingly, we direct the trial court to prepare an amended abstract of judgment to reflect a total of presentence time credits of 1,180 days as of the date of resentencing.

## DISPOSITION

We remand for the trial court to amend the abstract of judgment to reflect the total presentence time credits of 1,180 days as of the date of resentencing, and to forward the amended abstract to the appropriate authorities. In all other respects, the judgment is affirmed.

---

[7] The People's calculations of 889 days of actual custody credit and 1,179 days of total presentence time credits are based on the trial court's statement at resentencing that the initial sentencing occurred on November 18, 2021.